UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

       Plaintiff,

       vs.

TESLA, INC.,

       Defendant.
_____

Civil Action No. 1:18-cv-8947

## COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "Commission"), alleges as follows:

1. This case involves the failure of Tesla, Inc. ("Tesla") to implement disclosure controls or procedures to assess whether information disseminated by its Chief Executive Officer, Elon Musk, via his Twitter account was required to be disclosed in reports Tesla files pursuant to the Securities Exchange Act of 1934 ("Exchange Act") within the time periods specified in the Commission's rules and forms.

2. On November 5, 2013, Tesla publicly filed a Form 8-K with the Commission stating that it intended to use Musk's Twitter account as a means of announcing material information to the public about Tesla and its products and services and has encouraged investors to review the information about Tesla published by Musk via his Twitter account.

3. Since that time, Musk has used his Twitter account to distribute material information about Tesla, including company financial projections and key non-financial metrics.

Tesla, however, did not have disclosure controls or procedures in place to assess whether the information Musk disseminated via his Twitter account was required to be disclosed in reports Tesla files pursuant to the Exchange Act within the time periods specified in the Commission's rules and forms. Nor did it have sufficient processes in place to ensure the information Musk published via his Twitter account was accurate or complete.

4. By engaging in the conduct, Tesla violated, and unless restrained and enjoined will violate again, Rule 13a-15 [*17 C.F.R. § 240.13a-15*] of the Exchange Act [15 U.S.C. *§ 78a, et seq.*].

## NATURE OF PROCEEDING AND RELIEF SOUGHT

5. The Commission brings this action against Tesla pursuant to Section 21(d) of the Exchange Act [*15 U.S.C. § 78u(d)*] to seek an order enjoining the transactions, acts, practices, and courses of business alleged in this Complaint, civil penalties, and such further relief that the Court may deem appropriate.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [*15 U.S.C. §§ 78u(d), 78u(e), and 78aa*].

7. Venue in this District is proper pursuant to Section 27 of the Exchange Act [*15 U.S.C. § 78aa*]. Defendant transacts business in this District, and certain of the acts, practices, transactions, and courses of business constituting the violations alleged in this Complaint occurred within this District, and were effected, directly or indirectly, by making use of the means, instruments, or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of national securities exchanges.

**DEFENDANT**

8.      **Tesla**, which designs, develops, manufactures, and sells electric vehicles and energy generation and storage systems, is incorporated in Delaware with its principal place of business in Palo Alto, California. Tesla conducted an initial public offering in 2010, and at all relevant times, its common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act [*15 U.S.C. § 78l(b)*] and was publicly traded on the Nasdaq Global Select Market under the ticker symbol TSLA.

**RELEVANT PERSON**

9.      **Elon Musk**, age 47, resides in Los Angeles, California. He co-founded Tesla in 2003 and since that time has been the Chairman of Tesla's Board of Directors and largest stockholder. He was named Chief Executive Officer in 2008. Musk oversees all product development, engineering, and design of Tesla's products.

**FACTUAL ALLEGATIONS**

**Musk Used Twitter to Communicate with Millions of People as Tesla's Spokesman**

10.     In 2009, Musk created a profile on the social media application Twitter (twitter.com/elonmusk).

11.     On November 5, 2013, Tesla publicly filed a Form 8-K with the Commission stating that it intended to use Musk's personal Twitter account as a means of announcing material information to the public about the company and its products and services. Tesla has encouraged investors to review the information about the company published by Musk via his Twitter account.

12.     Since November 2013, Musk has used his Twitter account to publish material information about Tesla. For example, Musk has published forward-looking guidance regarding

3

Tesla's financial metrics via Twitter.  Musk has also used Twitter to disclose key non-financial information about Tesla, including production forecasts, production achievements, and new product releases.  Tesla's Chief Financial Officer described Musk's Twitter statements as a "strong channel of marketing" with Musk acting as a "spokesman" for Tesla.

13. As of August 2018, over 22 million people, including members of the press, "followed" Musk on Twitter.  His tweets were published instantaneously to those people and were also publicly available to anyone with Internet access.

**Musk's August 2018 Statements Via Twitter**

14. On Tuesday, August 7, 2018, Musk published a series of statements about a transaction to take Tesla private using his personal Twitter account.  Musk did not consult with Tesla's Board of Directors or any other Tesla employees about these tweets before publishing them.

15. At approximately 12:48 PM EDT on Tuesday, August 7, 2018, Musk, using his mobile phone, published a tweet, "Am considering taking Tesla private at $420.  Funding secured."  Immediately after this tweet, the trading volume and price of Tesla shares spiked.

16. Over the next few hours, Musk made additional statements about taking Tesla private.  At approximately 1:15 PM EDT, Musk responded to another Twitter user's question, "At what price?" by repeating "420."

17. At approximately 1:40 PM EDT, Musk tweeted, "I don't have a controlling vote now & wouldn't expect any shareholder to have one if we go private.  I won't be selling in either scenario."

18. At approximately 2:00 PM EDT, Musk tweeted, "My hope is *all* current investors remain with Tesla even if we're private.  Would create special purpose fund enabling

anyone to stay with Tesla.  Already do this with Fidelity's SpaceX [a privately held company for which Musk serves as CEO] investment."  In response to this tweet, another Twitter user asked, "Could we still invest once private?"  Musk responded, "Yes, but liquidity events would be limited to every 6 months or so (like SpaceX)."

19. At approximately 2:07 PM EDT, Musk responded to a Twitter user who wrote, "Or if you do take Tesla private, please have a provision for retail investors who have held Tesla shares prior to Dec 31, 2016 that those shares will be converted into private shares in the new private company. . . ." by tweeting, "Absolutely.  Am super appreciative of Tesla shareholders.  Will ensure their prosperity in any scenario."

20. At approximately 2:08 PM EDT, Nasdaq halted trading in TSLA shares.

21. At approximately 2:13 PM EDT, Musk tweeted, "Shareholders could either to [sic] sell at 420 or hold shares & go private."

22. At approximately 3:07 PM EDT, Musk responded to a Twitter user's comment about a "forced buyout" by tweeting, "Def. no forced sales.  Hope all shareholders remain.  Will be way smoother & less disruptive as a private company.  Ends negative propaganda from shorts."  Later that day, Musk "retweeted" this statement, causing it to be published again in his Twitter feed.

23. At approximately 3:36 PM EDT, Musk tweeted a link to a public Tesla blog post, entitled "Taking Tesla Private," in a tweet that stated, "Investor support is confirmed.  Only reason why this is not certain is that it's contingent on a shareholder vote."

24. These statements by Musk via Twitter were false and misleading and impacted the price of Tesla's stock.

25. After Nasdaq lifted the trading halt at approximately 3:45 PM EDT on August 7,

5

Tesla's stock price continued to rise, closing at $379.57, up over 6% from the time Musk first tweeted about taking Tesla private earlier that day.

**Reactions and Tesla's Response to Musk's August 7 Statements**

26. Investors, stock analysts, and journalists immediately sought clarification of Musk's August 7 statements. At 1:00 PM EDT, approximately 12 minutes after Musk published his tweet stating, "Am considering taking Tesla private at $420. Funding secured," Tesla's head of Investor Relations sent a text to Musk's chief of staff asking, "Was this text legit?"

27. At approximately 1:13 PM EDT, a Tesla investor and friend of Musk's chief of staff texted the chief of staff, "What's Elon's tweet about? Can't make any sense of it. Would be incredibly disappointing for shareholders that have stuck it out for so long." A few minutes later, at approximately 1:32 PM EDT, a business reporter texted Musk's chief of staff, "Quite a tweet! (Is it a joke?)."

28. At approximately 2:23 PM EDT, another reporter sent Musk an email with the subject, "Are you just messing around?" and wrote, "Reaching out to see what's going on with your tweets about taking the company private? Is this just a 420 joke gone awry? Are you serious? It seems like you are dancing into some pretty tricky legal territory by messing about with the markets this way. Is there an actual explanation coming?"

29. After Musk tweeted the link to the Tesla blog post, at approximately 5:09 PM EDT on August 7, an investment bank research analyst emailed Tesla's head of Investor Relations, "In the tweet, he said financing is secured but in the [blog post] he doesn't address this. Can you clarify?" Tesla's head of Investor Relations responded approximately ten minutes later, "I can only say that the first Tweet clearly stated that 'financing is secured.' Yes, there is a firm offer."

30. At approximately 5:23 PM EDT, another research analyst emailed Tesla's head of Investor Relations and another Investor Relations employee, "Had some questions/clarifications on today's news and blog post. Can either of you speak?" A few minutes later, Tesla's head of Investor Relations responded, "[A]part from what has been tweeted and what was written in a blog post, we can't add anything else. I only wanted to stress that Elon's first tweet, which mentioned 'financing secured' is correct."

31. After Tesla's head of Investor Relations received another inquiry from another investment bank research analyst at approximately 7:20 PM EDT, he asked whether the analyst had read Tesla's "official blog post on this topic." The analyst responded, "I did. Nothing on funding though?" The head of Investor Relations replied, "The very first tweet simply mentioned 'Funding secured' which means there is a firm offer. Elon did not disclose details of who the buyer is." The analyst then asked, "Firm offer means there is a commitment letter or is this a verbal agreement?" The head of Investor Relations responded, "I actually don't know, but I would assume that given we went full-on public with this, the offer is as firm as it gets."

**Tesla Did Not Have Controls or Procedures Regarding Musk's Use of Twitter to Disseminate Information About Tesla**

32. Musk did not routinely consult with anyone at Tesla before publishing Tesla-related information via his Twitter account. Likewise, no one at Tesla reviewed Musk's tweets prior to publication.

33. Since November 5, 2013, when Tesla filed its Form 8-K disclosing that Musk's Twitter account would be used to disseminate material information about the company, Tesla did not have disclosure controls or procedures in place to assess whether the information published by Musk via his Twitter account was required to be disclosed in Tesla's Exchange Act reports within the time periods specified in the Commission's rules and forms. Nor did Tesla have

sufficient processes in place to ensure the information Musk published via his Twitter account was accurate or complete. Indeed, until after the August 7, 2018 tweets, Tesla had no corporate policies that specifically addressed Musk's use of Twitter.

## CLAIM FOR RELIEF
### Violations of Rule 13a-15 of the Exchange Act

34. Paragraphs 1 through 33 are hereby re-alleged and are incorporated herein by reference.

35. Defendant has at all relevant times been an issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [*15 U.S.C. § 78l*].

36. Defendant failed to maintain controls and procedures designed to ensure that information required to be disclosed in the reports that it files or submits pursuant to the Exchange Act is recorded, processed, summarized, and reported, within the time periods specified in the Commission's rules and forms.

37. Defendant also failed to maintain controls and procedures designed to ensure that information required to be disclosed in the reports that it files or submits pursuant to the Exchange Act is accumulated and communicated to its management, including its principal executive and principal financial officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.

38. By reason of the foregoing, Defendant violated Rule 13a-15 [*17 C.F.R. § 240.13a-15*] of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Finding that Defendant violated the provisions of the federal securities laws as alleged herein;

**II.**

Permanently restraining and enjoining Defendant from, directly or indirectly, engaging in conduct in violation of Rule 13a-15 [*17 C.F.R. § 240.13a-15*] of the Exchange Act;

**III.**

Ordering Defendant to pay civil penalties pursuant to Section 21(d) of the Exchange Act [*15 U.S.C. § 78u(d)*];

**IV.**

Granting such other and further relief as this Court may deem just, equitable, or necessary.

Dated: September 29, 2018                           Respectfully submitted,

*/s/ Jina L. Choi*
Jina L. Choi
Cheryl L. Crumpton*
E. Barrett Atwood*

*Application to appear *pro hac vice* forthcoming

U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4459 (Crumpton)
crumptonc@sec.gov

44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2467 (Atwood)
atwoode@sec.gov

Of counsel:

Erin E. Schneider
Steven D. Buchholz
Walker S. Newell
Bernard B. Smyth